# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
April 26, 2011 Session

## STATE OF TENNESSEE v. VICTOR D. McMILLER

### Direct Appeal from the Criminal Court for Sullivan County
### No. S55,605    Robert H. Montgomery, Jr., Judge

---

### No. E2010-01558-CCA-R3-CD - Filed December 6, 2011

---

Defendant, Victor D. McMiller, was charged with two counts each of the sale and delivery of dihydrocodeinone, a Schedule III controlled substance. Defendant was convicted on all four counts. His convictions for delivery of a controlled substance were merged into his convictions for sale of a controlled substance, and Defendant was sentenced to 12 years for each conviction, and his convictions were ordered to be served consecutively for an effective sentence of 24 years. On appeal, Defendant argues that: 1) the evidence was insufficient to support his convictions; 2) the trial court erred by allowing testimony of Defendant's prior bad acts; 3) the presentment was facially invalid because it states that sale or delivery of a Schedule III controlled substance is a Class C, rather than Class D, felony; and 4) the trial court erred by ordering consecutive sentences. After a careful review of the record, we affirm Defendant's convictions and sentences.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, J., joined. DAVID H. WELLES, SP.J., not participating.

Ricky A.W. Curtis, Blountville, Tennessee, for the appellant, Victor D. McMiller.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Kent Chitwood, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

*Facts*

Detective Scott Reed, of the Kingsport Police Department Vice and Narcotics Unit, testified that he first came into contact with Patricia Wise in 2008 when she was arrested for

theft. Ms. Wise became a confidential informant for the Kingsport Police Department. Detective Reed arranged a controlled drug buy through Ms. Wise on February 11, 2008. At approximately 9:30 p.m., he rode to the location of the buy with Ms. Wise in her vehicle. She was wearing audio and video surveillance equipment. Detective Reed searched Ms. Wise's vehicle and person for illegal drugs and found none. Detective Reed gave Ms. Wise $100 to purchase 14 Lortab pills. They arrived at the location, which was an apartment complex, and Detective Reed saw Defendant in a white Ford Explorer. Ms. Wise exited her vehicle and walked over to Defendant's vehicle. Detective Reed testified that he did not see the actual "hand to hand" exchange between Defendant and Ms. Wise. Ms. Wise returned to her vehicle with the pills, which Detective Reed took from her and logged into evidence.

Detective Reed arranged a second controlled buy to take place on April 23, 2008, with the same informant, Ms. Wise. On that date, Detective Reed again searched Ms. Wise's person and vehicle and did not find any illegal drugs. Ms. Wise was wired with audio monitoring equipment and given $70 to purchase ten Lortab pills. Ms. Wise drove alone to the same location as the first buy. Detective Reed followed her to the location in another vehicle and parked nearby. Detective Reed observed Ms. Wise go inside the residence. Detective Reed listened to the transaction on the audio recording and saw Ms. Wise leave the residence and leave in her vehicle. Detective Reed followed her to a predetermined location, and another officer, Detective Hank McQueen, collected the Lortab pills, which he processed into evidence.

On cross-examination, Detective Reed testified that the Ford Explorer vehicle that Defendant was driving was not registered to Defendant. He testified that Ms. Wise was an admitted cocaine user. Ms. Wise was compensated for acting as an informant. Detective Reed did not search Ms. Wise's undergarments, and he did not recall whether he searched inside her mouth, prior to the controlled buys. Defendant's name was on the lease of the apartment at the location of both controlled buys. On re-direct examination, Detective Reed testified that Ms. Wise had also been used to purchase drugs from another individual at Defendant's residence in January, 2008. Ms. Wise identified Defendant in a photographic lineup on March 17, 2008.

Patricia Wise testified that sometime around December of 2007 or January of 2008, she was charged with felony theft. At the time of her arrest, she had been using crack cocaine for approximately four months, but she testified that she had not used drugs since that time. She contacted the Kingsport Police Department to report a meth lab. She hoped to receive a more lenient disposition on her charges in exchange for information to the police. Ms. Wise gave officers information about Jessica Hooker, a co-worker, and they arranged a drug transaction. Detective Reed rode with Ms. Wise to the apartment complex where Ms. Hooker lived, but Ms. Hooker was not home. Ms. Wise went to Defendant's apartment, and

Ms. Hooker was outside waiting for her. They went inside Defendant's apartment, and Ms. Hooker introduced Ms. Wise to Defendant. Defendant was sitting in the living room. Ms. Hooker and Ms. Wise went to the bedroom, where Ms. Hooker gave Ms. Wise Lortab pills in exchange for money provided to Ms. Wise by Detective Reed.

Ms. Wise testified that on February 11, 2008, Detective Reed again rode with her to Defendant's apartment. Detectives searched her person and her vehicle, wired her with audio and video surveillance, and gave her $100 to purchase 14 Lortab pills. When they arrived, she parked her vehicle adjacent to Defendant's. She stepped out of her vehicle and stood beside Defendant's vehicle. She handed Defendant the money, and he gave her the pills and $2 in change. She got back inside her vehicle and drove away. She contacted the Kingsport Police Department again in April to set up another transaction with Defendant. She was again searched, wired, and given money for the buy. She drove to Defendant's apartment. She testified that she did not believe Detective Reed rode with her on that occasion. She went inside Defendant's apartment and purchased pills, which she gave to detectives. On cross-examination, Ms. Wise admitted that she had also been charged with two counts of misdemeanor theft and for issuing a worthless check.

TBI Agent Carl Smith testified that he tested pills submitted by the Kingsport Police Department. There were 14 tablets, containing dihydrocodeinone, a Schedule III controlled substance. TBI Agent Ashley Cummings also tested pills received in this case. She counted ten tablets, also containing dihydrocodeinone, a Schedule III controlled substance.

Jessica Hooker testified that she sold Lortabs to Patricia Wise on January 28, 2008. Ms. Wise asked Ms. Hooker if she knew where she could get some Lortab pills, and Ms. Hooker responded that she could get them from Defendant, her then boyfriend. Ms. Hooker was married to Defendant at the time of Defendant's trial, but they were separated. Ms. Hooker testified that Defendant had a prescription for them because he had degenerative bone disease. Ms. Wise went to Defendant's apartment, and Ms. Hooker sold her the pills. Ms. Hooker later gave the money to Defendant. Ms. Hooker sold pills to Ms. Wise on another occasion in March, 2008. The transaction again took place in Defendant's apartment in the bedroom. Defendant told Ms. Hooker that he had sold pills and that if she knew anyone who wanted to buy some, that he had them to sell. Ms. Hooker was charged with two counts each of the sale and delivery of dihydrocodeinone, to which she pled guilty. Ms. Hooker testified that Defendant was not present in his apartment for the January transaction, but he was present for the March transaction. Ms. Hooker testified on cross-examination that she did not have any personal knowledge that Defendant sold Lortabs to Ms. Wise on February 11th or April 23rd, and she never saw him sell Lortabs to anyone. Following a jury-out hearing, on redirect examination, Ms. Hooker clarified that she had not seen Defendant

sell Lortabs to anyone during the time period of these offenses, but that he had told her that he was selling Lortabs.

Terry Bradley testified that on February 11, 2008, he met Ms. Wise and Defendant at the Model City Motel. Mr. Bradley testified that he heard Ms. Wise tell Defendant that she "was going to send him back to the penitentiary." He testified that Ms. Wise was "squalling," and she looked like "she was geeked up like she'd been smoking rock." On cross-examination, Mr. Bradley testified that he was incarcerated at the time of trial, charged with robbery, and that he had prior convictions for aggravated robbery and aggravated burglary.

Defendant did not testify.

*Analysis*

## I.      Sufficiency of the evidence

Defendant asserts that the evidence at trial was insufficient to support his convictions for the sale and delivery of a Schedule III controlled substance. Specifically, Defendant argues: 1) that there was no proof of the amount of hydrocodone or dihydrocodeinone in the tablets analyzed by the TBI; and 2) that there was insufficient evidence of his identity because the confidential informant did not identify him at trial;

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. *See State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003); *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *See Carruthers*, 35 S.W.3d at 558; *Hall*, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the

testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. *See Evans*, 108 S.W.3d at 236; *Bland*, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. *See Evans*, 108 S.W.3d at 236-37; *Carruthers*, 35 S.W.3d at 557.

Defendant was convicted of selling and delivering dihydrocodeinone, a Schedule III controlled substance, a Class D felony. Tenn. Code Ann. § 39-17-417(a)(4), (d)(1). Under our criminal code, "[i]t is an offense for a defendant to knowingly . . . [d]eliver a controlled substance" or to knowingly "[s]ell a controlled substance." Tenn. Code Ann. § 39-17-417(a)(2), (3).

Defendant argues that the State failed to prove that the dihydrocodeinone sold by Defendant was, in fact, a Schedule III narcotic because there was no evidence presented of the weights and ratios of the drugs contained in the tablets. Under Tennessee Code Annotated section 39-17-410, dihydrocodeinone is specifically designated as a narcotic drug and a Schedule III controlled substance. The statute provides in pertinent part as follows:

> (a) Schedule III consists of the drugs and other substances, by whatever official name, common or usual name, chemical name, or brand name designated, listed in this section.
> . . . .
>> (e) NARCOTIC DRUGS.
>> (1) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation containing any of the following narcotic drugs, or their salts calculated as the free anhydrous base or alkaloid, in limited quantities:
>> . . . .
>> (C) Not more than three hundred (300) milligrams of dihydrocodeinone per one hundred (100) milliliters or not more than fifteen (15) milligrams per dosage unit, with a fourfold or greater quantity of an isoquinoline alkaloid of opium;
>> (D) Not more than three hundred (300) milligrams of dihydrocodeinone per one hundred (100) milliliters or not more than fifteen (15) milligrams per dosage unit, with one (1) or more active nonnarcotic ingredients in recognized therapeutic amounts;

Tenn. Code Ann. § 39-17-410(a), (e)(1)(C)-(D).

Agents Smith and Cummings both testified as experts in the area of drug analysis. Agent Smith identified the controlled substance extracted from the tablets sold to Ms. Wise by Defendant on February 11, 2008, by first doing a visual logo inspection and then by using an infrared spectrometer. He conclusively determined that the tablets contained dihydrocodeinone, a Schedule III controlled substance. Agent Smith only counted the tablets and did not weigh them. Agent Smith referenced Tennessee Code Annotated to determine that the substance, dihydrocodeinone, was a Schedule III drug. He testified as follows:

A:      We use the Tennessee Code Annotated and according to the results
        we enter in the scheduling of that substance.

Q:      Dihydrocodeinone is a Schedule III.

A:      It is a Schedule III according to the way these tablets are made.

Q:      Watson 385 is a generic Lortab.

A:      Really I don't remember what a Lortab is but I think that's correct.

Agent Cummings testified that she visually examined the tablets sold by Defendant to Ms. Wise on April 23, 2008, and performed a logo identification. Agent Cummings did not weigh the tablets. Using a gasometrical mass spectrometer analysis, Agent Cummings determined that the tablets contained dihydrocodeinone, a Schedule III substance. On cross-examination, Agent Cummings testified that the pills were Watson 385, which are commonly known as Lortabs. She referenced Tennessee Code Annotated to classify the pills as a Schedule III controlled substance. Agent Cummings testified that "tablets aren't generally weighed as a part of our examination. Basically we get that information from our logo identification book that tells us how many milligrams of each [hydrocodone and acetaminophen] is in the tablets."

Agent Cummings testified:

Q:      And dihydrocodeinone, what schedule is that?

A:      Three.

Q:      Okay, do you know enough about the schedules to testify as to which
        is classified as more addictive, less addictive?

A:        I have a little bit of knowledge of that. The lower the schedule number the higher the potential for abuse and the more subject to abuse that it is, so therefore a Schedule II would be more addictive I guess, according to those guidelines, than a III.

Q:        So in this case you didn't find that it was more addictive, you found that it was the Dihydrocodeinone, the Schedule III.

A:        Yes.

Q:        Okay, any confusion in your mind as to what that was?

A:        No.

We note that defense counsel affirmatively stated in the record that he had no objection to the admissibility of the lab reports of each TBI forensic scientist. Both reports identified the tablets at issue as dihydrocodeinone, a Schedule III controlled substance. We conclude that the evidence is sufficient that the tablets contained narcotics that meet the definition of a Schedule III controlled substance. Both agents offered expert testimony regarding tablets sold by Defendant to Ms. Wise on February 11, and April 23, 2008. Expert testimony is used if scientific, technical, or other specialized knowledge will substantially assist the trier of fact to "understand the evidence or to determine a fact in issue[.]" Tenn. R. Evid. 702. The agents' testimony assisted the trier of fact in understanding the composition, and therefore the classification, of the tablets. Defendant is not entitled to relief on this issue.

As to Defendant's identity as the person who sold the drugs to Ms. Wise, we also conclude that the evidence was sufficient. The identification of a defendant as the person who committed the crime is a question of fact for the jury. *See State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. *State v. Radley*, 29 S.W.3d 532, 536 (Tenn. Crim. App. 1999) (citing *Strickland*, 885 S.W.2d at 87-88). The jury is charged with making credibility determinations, and this Court will not substitute its inferences for those of the trier of fact, nor will it reweigh the credibility of witnesses on appeal. *State v. Smith*, 24 S.W.3d 274, 278-79 (Tenn. 2000).

Ms. Wise testified that she bought drugs from "Victor" on February 11, 2008. She knew from having been previously introduced to him that his first name was "Victor." Detective Reed testified:

Q: Okay, did you have a clear view from your vehicle into his vehicle?

A: I did.

Q: Okay, any doubt in your mind that it was [Defendant]?

A: No.

Q: Okay, the individual that was in that vehicle on February 11th, 2008, is that the individual sitting here today?

A: It is.

After that transaction, Ms. Wise identified Defendant in a photographic lineup. Detective Reed testified that he pulled Defendant's driver's license photo to use in the lineup, and he recognized Defendant as the person in the vehicle from whom Ms. Wise purchased drugs. Ms. Wise testified that on April 23, 2008, she went to Victor's apartment and again purchased drugs from him. When asked on direct examination, concerning the audiotape, whether the other voice on the recording sounded like Defendant, she testified, "yes, it does." The evidence is sufficient to support Defendant's convictions. Defendant is not entitled to relief on this issue.

## II. Prior bad acts testimony

Next, Defendant asserts that the trial court committed reversible error by allowing Ms. Hooker to testify that Defendant had previously sold Lortabs. The State responds that Defendant waived this issue by requesting a curative instruction, which the trial court gave the jury, and by not objecting to the testimony.

Generally, evidence of a defendant's prior crimes, wrongs, or acts is not admissible to prove that he committed the crime in question. *See* Tenn. R. Evid. 404. Such evidence carries the inherent risk of the jury convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than the strength of the evidence. *See State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994). The risk is greater when the prior bad acts are similar to the crime for which the defendant is on trial. *See id*. However, Tennessee Rule of Evidence 404(b) states that evidence of prior crimes, wrongs, or acts may be admissible when it is probative of material issues other than conduct conforming with a character trait. Evidence of a defendant's criminal character is admissible to prove: (1) the use of "motive and common scheme or plan" to establish identity, (2) to establish the defendant's intent in

committing the offense on trial, and (3) to "rebut a claim of mistake or accident if asserted as a defense." *State v. McCary*, 922 S.W.2d 511, 514 (Tenn. 1996).

In order to admit such evidence, a trial court must, upon request, hold a hearing outside the jury's presence and determine that a material issue exists that does not concern conduct conforming with a character trait. *See* Tenn. R. Evid. 404(b). The trial court must also, upon request, state on the record the material issue, the ruling, and the reasons for admitting the evidence. *See id*. Additionally, the trial court must determine that the probative value of the evidence outweighs the danger of unfair prejudice. *Id*. If the trial court follows the procedure set forth in Rule 404(b), an appellate court may only disturb the trial court's decision upon a finding of an abuse of discretion. *See State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997).

Prior to trial, the State advised the trial court that it intended to call Ms. Hooker as a witness. Further, the State anticipated her testimony would be that Defendant had Lortabs available for sale during the relevant time period and that Ms. Hooker had sold Lortabs to Ms. Wise while inside Defendant's apartment. The State contended that the evidence was relevant to show Defendant's identity and intent. Defense counsel objected to the testimony. Overall, it appears the trial court declined to rule that the evidence was admissible. The court stated as follows:

THE COURT:     Well, in looking at 404(b) and of course it would be as I, based on what you all are telling me right now, I consider it to be evidence of other crimes basically. I mean where he's providing drugs and of course I haven't heard any of the State's proof at this point in time. I don't know if – I mean General, you said several things with regard to identity, motive, you know, possibly. Again, I don't know and I've not heard your proof but it would appear to me that at this point in time, and of course I'm open to hear additional evidence later on because, you know, and if you want to offer her at some point in time as to what she would say on that issue and for me to hear it I'll do it. But at this point in time it would seem to me that the – I think that the – all I know right now I don't believe [sic] that the probative value is outweighed by the danger of unfair prejudice at this point in time.

. . . .

Now, you know, I mean if some of those issues where you're saying that you might want to introduce it, you know come into play then I'll be more than happy to hear it but just on your case in chief I just don't see that, General.

On cross-examination by defense counsel, Ms. Hooker testified that she never saw Defendant sell drugs to Ms. Wise or anyone else. She testified as follows:

Q: You don't have any evidence or any personal knowledge that [Defendant] sold drugs to Pat Wise on February 11th.

A: No, I don't.

Q: You didn't see any transaction whereby [Defendant] sold Lortabs to Pat Wise on April 23rd.

A: No, I don't.

Q: In fact you were married [to] this man, you never saw him sell Lortabs to anybody did you?

A: No, I didn't.

The State requested a jury-out hearing and asked the trial court for permission to ask Ms. Hooker whether she knew that Defendant had sold drugs to Ms. Wise because of Ms. Hooker's testimony on cross-examination, that she did not have any personal knowledge of Defendant having sold drugs to anyone, was misleading. During the jury-out hearing, the State questioned Ms. Hooker about whether she knew Defendant had sold drugs between January and April of 2008, and she responded that she did because Defendant had told her that he had sold drugs and that he had Lortabs available for sale. Defense counsel agreed with the State that Ms. Hooker's response was misleading and suggested to the court as follows:

[Defense counsel]: I think, Your Honor, the remedy would be to allow [the prosecutor] to put her back on the stand and allow [the prosecutor] to say, "Ms. Hooker, [defense counsel] just asked you if you had any personal

knowledge, you said no, isn't it true that he told you that he had sold drugs," or something along those lines and that would cure the misconception.

The trial court agreed and asked defense counsel whether he wanted to request a curative instruction to the jury. Defense counsel stated:

[Defense counsel]: Judge, I think just to give some guidance to the jury would be necessary and I think it would be to the benefit of both parties to be honest with you, just so – I mean [the prosecutor] is going to be the one that gets to stand up first and ask her that question so the jury doesn't think, "Well why is [Ms. Hooker's answer] different for him than [it was for] [defense counsel]." I think an instruction that we are correcting an error is appropriate.

In the jury's presence, on redirect examination, Ms. Hooker testified that Defendant had told her on more than one occasion between January and April of 2008 that he was selling Lortabs. The trial court then instructed the jury as follows:

THE COURT: All right, ladies and gentlemen, let me just kind of explain something to you, give you an instruction. If from the proof you find that the defendant has committed a crime or crimes other than that for which he is on trial you may not consider such evidence to prove his disposition to commit the crime for which he's on trial in this case. However, you can use that evidence for the limited purpose of determining whether it provides a complete story of the crime in this case, in other words the evidence may be considered by you where the prior crime and the present alleged crime are logically related or connected or you may find that it involves intent, in other words the defendant's intent that such evidence may be considered by you if it tends to establish that the defendant actually intended to commit the crime of which he is presently charged. But such evidence of those other crimes, if considered by you for any purpose, must not be considered for any purpose other

-11-

> than what I've just specifically stated. If each of you understand that and can follow that please raise your hand. Again, let the record reflect all jurors have raised their hand[s]. . . .

We agree with the State that Defendant has waived this issue by not making a contemporaneous objection to Ms. Hooker's testimony at trial. *See* Tenn. R. App. P. 36(a) (a party is not entitled to relief if the party failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error). Although defense counsel initially objected to Ms. Hooker's testimony, as summarized by the prosecutor to the trial court prior to trial, defense counsel then opened the door to her testimony of Defendant's prior drug sales by asking her about her knowledge of it during cross-examination. The State argued, and the trial court, and ultimately, the Defendant, all agreed that Ms. Hooker's testimony during cross-examination was misleading. Although Ms. Hooker had not seen Defendant sell Lortabs to anyone, she did have personal knowledge that he had sold them because Defendant told her that he had. As the State points out on appeal, defense counsel offered the "remedy" to Ms. Hooker's misleading testimony on cross-examination. The trial court allowed Ms. Hooker's redirect testimony, as suggested by defense counsel, in order to avoid confusing the jury. Defendant cannot challenge on appeal a remedy he supported and acquiesced in at trial. Defendant is not entitled to relief on this issue.

## III. Presentment

Defendant asserts that the Presentment in this case is facially invalid because it charges Defendant with two counts each of the sale and delivery of a Schedule III controlled substance, a Class C felony, when in fact, the offenses for which Defendant was charged and convicted are Class D felonies. The State responds that Defendant has waived this issue because he did not raise it either in a pretrial motion or in his motion for new trial. Tenn. R. Crim. P. 12(b)(2) (a motion alleging a defect in the indictment must be raised prior to trial or the issue is waived); Tenn. R. App. P. 3(e) (an issue must be raised in a motion for new trial or it is waived). The State further asserts that even if the issue is not deemed waived, the presentment is sufficient to put Defendant on notice of the charges he would have to defend. We agree with the State.

After the jury was sworn in this case, the State moved to amend the presentment. The prosecutor noted that the presentment erroneously classified the charges as Class C felonies, rather than Class D felonies. Defense counsel objected to the amendment. The trial court noted that the erroneous classification was "surplusage," and that it did not impair Defendant's ability to defend himself, but that the court could not allow an amendment to the presentment without Defendant's consent because jeopardy had attached. Therefore, the

court denied the prosecutor's request. The court stated, "I don't find that it in any way prejudices the defendant, the fact that it says a C as opposed to a D."

Pursuant to Tennessee Code Annotated section 40-13-202, an indictment or presentment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. If the language of the indictment clearly advises the petitioner of the crime for which he is charged, provides a basis for proper judgment, and protects the petitioner from double jeopardy, the indictment comports with the requirements of the statute. A charging instrument is not defective because of the inclusion of surplusage if, after eliminating the surplusage, the offense is still sufficiently charged. *State v. Culp*, 891 S.W.2d 232, 236 (Tenn. Crim. App. 1994).

Count 1 of the presentment in this case alleged as follows:

> The Grand Jurors for Sullivan County, Tennessee, being duly empanelled and sworn, upon their oath present that VICTOR MCMILLER on or about February 11, 2008, in the State and County aforesaid and before the finding of this presentment did unlawfully, feloniously and knowingly sell Dihydrocodeinone, a Schedule III Controlled Substance, contrary to T.C.A. § 39-17-417, a Class C felony, and against the peace and dignity of the State of Tennessee.

Count 2 contains exactly the same language, except that "deliver" is in place of "sell," and Counts 3 and 4 allege the sale and delivery on April 23, 2008. Although the presentment does not include a reference to which statutory subsection Defendant was alleged to have violated, it is clear that he was charged with the sale and delivery of dihydrocodeinone, a Schedule III controlled substance, which, under Tenn. Code Ann. § 39-17-417, is a Class D felony. Tenn. Code Ann. § 39-17-417(d)(1).

We note that the judgments correctly reflect that Defendant's convictions were Class D felonies. The classification of an offense in the indictment or presentment is not required by the statute. Therefore, we agree with the trial court that the erroneous classification of the offenses was surplusage. Defendant is not entitled to relief on this issue.

## IV.    Consecutive sentencing

Defendant asserts that the trial court erred by imposing consecutive sentences. Specifically, Defendant contends that the aggregate sentences imposed are not reasonably related to the severity of the offenses.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous.  Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).  When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct.  Tenn. Code Ann. § 40-35-401(d).  However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999); *see also State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008).  If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness.  *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also Carter*, 254 S.W.3d at 344-45.  In conducting a de novo review of a sentence, this Court must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and argument as to the sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee's sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in his own behalf about sentencing.  Tenn. Code Ann. § 40-35-210(b); *see also Carter*, 254 S.W.3d at 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists.  *State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997).  As relevant here, this section permits the trial court to impose consecutive sentences if the court finds that either "(1) [t]he defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;" or "(2) [t]he defendant is an offender whose record of criminal activity is extensive[.]"  Tenn. Code Ann. § 40-35-115(b)(1)-(2).  The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved" under the circumstances.  Tenn. Code Ann. § 40-35-102(1), -103(2).  Whether sentences are to be served concurrently

or consecutively is a matter addressed to the sound discretion of the trial court. *State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

In imposing consecutive sentences in this case, the trial court found:

THE COURT: Now, in looking and making a determination about whether a sentence should be – these Counts One and Three should be consecutive or concurrent with each other, . . . . [F]rankly there are two [statutory factors] that I need to consider in this case. One is whether or not you are a professional criminal, that you have knowingly devoted your life to criminal activity as a source of livelihood. If you look at the incidents that the State has pointed out in their enhancement notice, the ones that they pointed out basically are all crimes either where it involves stealing, defrauding another person or the sale of drugs; that's credit card fraud, forgery, aggravated burglary and theft, facilitation of drug sales, drug sales, auto burglary, grand larceny, receiving stolen property. All of those are crimes in which you're using criminal enterprises for the purpose of obtaining income, frankly. And so I do find based upon that that you basically have used your adult life and the crimes that you have committed have primarily been for the purpose of using criminal acts as a major source of livelihood. . . . [B]ecause of your limited employment history it appears that every time that you're out of custody you're committing what I would consider to be theft type crimes of illegal crimes that enable you to obtain income. So I find that you're a professional criminal and I find by a preponderance of the evidence that you're a professional criminal who has knowingly devoted your life to criminal acts as a major source of livelihood.

I also find – the second factor that I find, too, is that you have a record of criminal activity that's extensive. I mean of course all these charges, convictions that the State has introduced are in there and they're reflected

-15-

but in addition that there are other charges that are set out in your presentence report, a prior assault charge in 2000, or conviction in 2000. Let's see, petty larceny in General Sessions Court. But all of those were, all those added together in my opinion creates what I find to be by a preponderance of the evidence an extensive record of criminal activity.

The record supports the trial court's conclusion that Defendant had an extensive criminal history and that he was a professional criminal, although it is well-established that a finding only one of the statutory factors is sufficient to warrant the imposition of consecutive sentencing. *See Adams*, 973 S.W.2d at 231. Defendant is not entitled to relief on this issue.

Finally, Defendant contends that the trial court abused its discretion when it refused to waive the fines imposed by the jury. At the conclusion of the trial, the jury assessed a fine of $25,000.00 for each conviction pursuant to Tennessee Code Annotated § 39-17-428. At the sentencing hearing, Defendant asked the court to waive the fines because the court had found that Defendant was indigent and because Defendant would be incarcerated for the next 24 years and unable to pay the fines. The trial court refused to waive the fines, finding that Defendant was "an able-bodied person," and that the jury had not imposed the maximum fines, apparently taking into consideration Defendant's "situation and circumstances." The trial court noted that even though Defendant was on disability, "it was not appropriate . . . to reverse the jury's decision on the fines." Because Defendant's convictions in Counts 2 and 4 were merged with his convictions in Counts 1 and 3, the trial court also noted that there would be no fine in those two counts.

This Court has held that "[a] declaration of indigency, standing alone, does not . . . immunize the defendant from fines." *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). Indigency is just one factor that this Court will look to when reviewing the imposition of a fine. *Alvarado*, 961 S.W.2d at 153. In *State v. Beasley*, the trial court acknowledged the Defendant's indigence but imposed the fine, noting that she might become able to pay after she left prison. No. 01C01-9801-CR-00018, 1998 WL 626989, at *3-4 (Tenn. Crim. App., at Nashville, Sept. 16, 1998), *no perm. to app. filed*. This Court affirmed the fine, explaining that a defendant's indigence is only one of several factors relevant to the determination of an appropriate fine. *Id*.

Because the trial court considered the appropriateness of the fines in this case and made findings concerning Defendant's ability, or future ability, to pay the fines, we will afford the trial court a presumption of correctness. The trial court did not err by denying

Defendant's request to waive the fines imposed by the jury. Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.


_____
THOMAS T. WOODALL, JUDGE